West'n District
Sept. 1823.

LANDREAUX
vs.
HAZLETON.

If the property of the debtor be covered by special mortgages and privileges, the sheriff may seize and sell as much as will satisfy the execution over and above the amount of the liens.

*LANDREAUX* vs. *HAZLETON.*

APPEAL from the court of the sixth district.

PORTER J. delivered the opinion of the court. The plaintiff demands five thousand dollars from the defendant, sheriff of Natchitoches, for having illegally, oppressively, and under color of his office, made a seizure of slaves and other property belonging to the plaintiff.

The defendant pleads, that writs of *fieri facias* were placed in his hands at the suit of certain persons: that the seizures he made under them are the acts complained of: that he acted in good faith: and that two days after he took the property into his possession, writs of seizure and sale were delivered to him at the suit of Rochelle & Shiff, on a mortgage which the plaintiff had given on the slaves seized.

The evidence given on the trial shews, that the amount which the defendant had to collect under the writs placed in his hands was $1.604 96: that the amount of property seized by him was $15.600, but that there were mortgages on it, amounting to the sum of $11,210; so that the balance unincumbered

was $2390, according to the estimation made pursuant to law.

The oral evidence is short, and not of much importance. It proves the seizure to have been made, under the circumstances which usually attend transactions of this kind : that the sheriff strictly pursued the law by taking with him two freeholders, who appraised the property before he seized it : that he took the property into his possession as by law he is commanded to do, and that he told the defendant, if he would give him security for the forthcoming of the property on the day of sale, he would leave it in his hands.

A bill of exceptions was taken to the opinion of the judge in his charge to the jury. The point on which he expressed that opinion goes to the whole merits of the case, so that an examination of the principles on which the action is sought to be maintained, will necessarily embrace this charge, and render a more particular notice of it unnecessary.

The question presented for decision, as was said from the bar, is one of considerable importance, but of little or no difficulty. It is whether a sheriff who finds a defendant's property incumbered with general or special

West'n District
Sept. 1823.

LANDREAUX
vs.
HAZLETON.

mortgages can take the whole of it, or at least a sufficient part to satisfy the execution in his hands, over and above the liens by which it is affected; or whether he is not compelled to seize an amount equal to that expressed in the writ, without noticing the mortgages.

The mortgage is a real right on the immoveable affected by it: it is in its nature indivisible: it subsists for the whole on all and each of the things affected by it, and on every part of them—*Civil Code*, 452, *art.* 3.

Consequently, then, any object he might have seized, was covered by mortgages to the amount of $11,210; and had he seized only the amount of the executions in his hands, he would have been doing a very unnecessary act; for it cannot be presumed that any one would have purchased property subject to mortgage five times its value. Had he found a purchaser, he could not have forced him to make payment, for the law says where there exist mortgages the sheriff shall only receive the surplus. There would, however, have been no surplus here, so that the sale would have been useless to the plaintiff, oppressive to the defendant, and tended to no other pur-

pose than to have shewn the insufficiency of the law—*Acts of 1817, sec. 17, p. 38.*

The argument, which this statute offers against the plaintiff's pretensions, will be rendered still stronger by referring to it more particularly. Its words are "that whenever any special mortgage or privilege exists on the property offered for sale, in favor of any other person than the creditor seizing, it shall be sold, subject to the payment of such special mortgage or privilege by the purchaser; and the sheriff or other public officer, making the sale, shall only receive the surplus." This enactment necessarily recognizes the right of the sheriff to seize property to a greater amount than that mentioned in the execution : for it points out he is to sell it, and that he is only to receive the surplus. This is what the officer has done here : and it is difficult for us to see how an act, which the legislature has sanctioned so plainly, could have been thought of, as furnishing ground for an action of damages.

It is said the sheriff had no right to notice mortgages except on the day of sale. His duty was to act under the law in such a way, as to give effect if possible to the execution in his

hands. In doing so he had as much right to notice mortgages, on the property he was about to seize, as he had a right to notice that an object surrendered to him by the debtor was not his property: a right which we never heard contested. The act of the legislature, which makes it the duty of the officer selling to produce the certificate of the register of mortgages on the day of sale, is made for the information and benefit of persons inclined to purchase, and has no relation whatever to the exercise of that discretion, which the law has vested in the sheriff.

It has been contended, he seized without notice. The statute does not require it, unless the judgments were by default, and the writs produced on the trial shew no such endorsement—*Acts* 1817, 34, *sec.* 14.

Arguments *ab inconvenienti* have been pressed on us, but where the law is clear they have little weight. We think, however, the inconveniencies are on the other side, and that the principles for which the plaintiff contends would render it impossible to make the money by a forced sale from a debtor situated as the plaintiff was. If men will leave nothing but

mortgaged property to satisfy their creditors, they must bear with the consequences.

The office of sheriff is one of great importance to the community. It calls for the discharge of duties difficult and delicate, and the law looks on such officers with tenderness, so long as they act in good faith. They are responsible to be sure for oppression, or for illegal conduct; but neither have been proved here, and we are satisfied this action cannot be maintained.

It is, therefore, ordered, adjudged and decreed, that the judgment of the district court be annulled, avoided and reversed, and that there be judgment for the defendant with costs in both courts.

*Johnston* and *Thomas* for the plaintiff, *Bullard* and *Rost* for the defendant.